**ÆTNA CASUALTY & SURETY CO. v. YEATTS et al.**

**No. 4404.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 10, 1938.

665

Robert G. Butcher, of Richmond, Va. (Parrish, Butcher & Parrish, of Richmond, Va., on the brief), for appellant.

G. E. Mitchell, Jr., of South Boston, Va., and R. Paul Sanford, of Danville, Va. (Wm. M. Tuck, of South Boston, Va., and A. M. Aiken, of Danville, Va., on the brief), for appellees.

Before NORTHCOTT and SOPER, Circuit Judges, and WEBB, District Judge.

SOPER, Circuit Judge.

The Surety Company, as plaintiff in the District Court, sought a declaratory decree under 28 U.S.C.A. § 400 adjudicating that a policy issued by it to Dr. W. C. Yeatts of Danville, Virginia, did not cover a claim asserted against the physician by the administrator of Elizabeth W. Burton, deceased, in a suit in the Corporation Court of Danville, and that consequently the company was under no obligation to defend and indemnify the assured against loss arising from the claim. Both parties to the suit in the state court were joined as defendants in the federal court. Pending adjudication the surety prayed the District Court to issue an injunction restraining the defendants from further prosecution of the suit in the state court. After the institution of its suit, the surety moved the District Court to issue the injunction, but after hearing, the court overruled the motion; and also overruled a motion pursuant to Rule 62(c) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, that pending appeal, the parties to the suit in the state court be enjoined from proceeding therein for thirty days. The question now before this court is whether the District Court erred in refusing to issue an injunction as prayed.

The Surety Company agreed in its policy to defend and indemnify the assured against actual loss and expenses not exceeding $5000 resulting from any claim for damages on account of any malpractice, error or mistake committed, or alleged to have been committed by the assured in the practice of his profession during the policy period, excepting where it should have been legally established that the damage was caused by the assured while engaged in or in consequence of the performance of a criminal act. The policy also provided that the assured, whenever required by the company, should aid in securing information and evidence and the attendance of witnesses, but should not voluntarily assume any liability or interfere in any legal proceeding without the written consent of the company previously given; and that if any person should obtain final judgment against the assured because of any such injuries, and execution thereon should be returned unsatisfied, or if such judgment should not be satisfied within thirty days after its rendition, then such person might proceed against the company to recover the amount of the judgment.

The declaration in the suit in the state court filed in August, 1938 was laid in trespass on the case and alleged that on July 1, 1938 the physician performed an operation upon the deceased in a negligent and unsuccessful manner so that peritonitis developed, and death ensued. The nature of the malady from which the deceased was suffering was not set out. Damages were claimed in the sum of $10,000.

The complaint in the case now before us, which was filed on September 12, 1938, charged that on July 1, 1938 the deceased woman visited the office of the physician and requested that he perform an abortion upon her so as to put an end to an existing pregnancy; that in consideration of a fee of $50 he attempted to perform the operation and in consequence thereof, the deceased developed peritonitis and on July 4, 1938 died. Thereafter, it was charged, the doctor paid to the father of the deceased the sum of $495.70 without the knowledge and consent of the Surety Company, with the understanding that this payment would constitute a settlement of all the claims that could be made against him by reason of the death of the deceased, and it was alleged that the successful defense

of the action now pending in the state court had been seriously harmed by the payment and that in consequence thereof the right of the physician to protection under the policy had been forfeited.

The Surety Company also asserted in its complaint that it had no liability under the policy in the event that the death of the deceased resulted from the performance of a criminal abortion; but that the physician had denied that he had performed an abortion and had demanded that the company, by virtue of the provisions of the policy, defend him in the action instituted against him in the state court, at the same time refusing to sign a non-waiver agreement permitting the surety company to defend the action and later contest its liability under the policy. In proof of the charge of criminal abortion, it was alleged that on July 28, 1938 attorneys, acting on behalf of the administrator of the estate of the deceased, had written to the physician charging that the deceased died as the result of an unlawful and negligent performance of an abortion upon her and had demanded prompt settlement of the claim upon penalty of the institution of a civil action in the amount of $10,000 in the Corporation Court of the City of Danville.

The Surety Company expressly pointed out the difficulty under which it would labor if it should undertake the defense of the action in the state court in that while it would be to the interest of both parties therein to show that the physician was engaged in the lawful practice of his profession in performing the operation, it would be to the interest of the Surety Company to prove the charge that the deceased died as the result of a criminal abortion; and that the difficulty would be increased if the assured, in view of the fact that the amount of the claim against him exceeds the maximum liability under the policy, should employ counsel on his own account to participate in the defense. Therefore, the Surety Company asserted its right to a decree determining its obligations under the policy, and in the meantime forbidding the prosecution of the suit in the state court.

■ We shall discuss the questions (1) whether the District Court had jurisdiction to determine the controversy; (2) whether the facts disclose a case proper for the passage of a declaratory decree; and (3), if an affirmative answer should be given to the first two questions, whether the District Court should have issued an injunction as prayed. It is contended that the jurisdictional amount under 28 U.S.C.A. § 41 (1) is lacking because the Surety Company is not obliged to indemnify the insured until a judgment has been rendered against him, and in the meantime the only point to be decided is whether the Surety Company is obligated by its policy to defend the suit in the state court; and there is no showing that the expense involved in the defense would exceed the sum of $3000. But the investigation goes deeper. It is intended to disclose that the Surety Company has no obligation to defend the insured against the claim for $10,000 because he has been guilty of criminal misconduct not covered by the policy. If this is shown, it will be necessarily determined thereby that the Surety Company has no obligation to indemnify him in the event of an adverse decision; and since its obligation to indemnify, if found to exist, extends to the sum of $5,000, the amount in controversy is sufficient. Stephenson v. Equitable Life Assurance Society, 4 Cir., 92 F.2d 406, 407; United States Fidelity & Guaranty Co. v. Pierson, 8 Cir., 97 F.2d 560; Commercial Casualty Ins. Co. v. Humphrey, D.C., 13 F. Supp. 174; Travelers Insurance Co. v. Young, D.C., 18 F.Supp. 450; Builders & Manufacturers Mutual Casualty Co. v. Paquett, D.C., 21 F.Supp. 858.

■ It is also suggested that true diversity of citizenship does not exist in the federal court although the plaintiff company is a Connecticut corporation and the individual defendants were citizens of Virginia. It is said that the parties should be rearranged, as was done in City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713, with the insured and the Surety Company on the same side and the claimant on the other, thus placing citizens of the same state on opposite sides of the case and defeating the jurisdiction of the court. It is often true that the interest of the defendant in a suit for damages and the interest of his indemnitor under a policy of insurance are identical, since each desires to defeat the claim; but in this case the Surety Company has raised a question of coverage and its position can be sustained only by a decision hostile to the interests of both the insured and the adverse claimant, and so they were properly joined as parties defendant.

Objections are raised to a decree declaring the rights of the parties, even if

the matter lies within the jurisdiction of the court and within the discretion lodged in the court by the statute. The discretion should not be exercised, it is said, for a number of reasons which may be outlined as follows: There is no privity of contract between the claimant and the surety, and there is as yet no actual controversy between them. No controversy can arise between them on the facts disclosed unless the claimant obtains a judgment against the doctor in the state court and he fails to satisfy it. Hence that which the surety now seeks is not the decision of an actual controversy, but an opinion upon a hypothetical state of facts which may never come to pass. Moreover, a decision in the suit in the federal court would not necessarily put an end to litigation between all of the parties to the suit, because the surety merely asks the court to say that it has no liability to defend or indemnify the insured, and if it fails to maintain this position, it will still be necessary to try the case between the administrator and the physician in the state court in order to determine the questions of negligence and of damages. Hence a decision of the instant suit may amount only to a piecemeal determination of the questions involved and may interfere with the trial of the preexisting litigation by anticipating a decision of only one of the defenses that may be urged therein. Therefore the questions involved should await the trial of the pending state suit which may put an end to the entire controversy by a decision favorable to the insured; and if the claimant is successful therein, and subsequently makes demand upon the surety, it will have a full and adequate opportunity to set up its defense.

It is no answer to a suit for a declaratory judgment that the plaintiff may have an adequate remedy elsewhere or that he seeks to establish a defense to a pending claim rather than affirmative relief; but it is well established that the benefits of the statute should not be extended unless there is an actual present controversy between the parties, and even then the court should not decide the disputed question if the result would be merely to anticipate the trial of an issue involved in a pending case or to determine the validity of a defense which could be tried equally well therein or to try a controversy piecemeal without complete decision of the matters in dispute. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R.

1000; Anderson v. Aetna Life Ins. Co., 4 Cir., 89 F.2d 345; Columbian Nat. Life Ins. Co. v. Foulke, 8 Cir., 89 F.2d 261; Stephenson v. Equitable Life Assur. Corp., 4 Cir., 92 F.2d 406; Farm Bureau Mut. Auto. Ins. Co. v. Daniel, 4 Cir., 92 F.2d 838; Aetna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321.

Bearing these considerations in mind, we are nevertheless of the opinion that a case is made on the facts recited for the relief afforded by a declaratory judgment. The immediate question which the surety must decide is whether it is obliged to defend the suit against the insured in the state court. Obviously its decision cannot await the determination of that suit, nor need the determination of its duty in this respect interfere with the trial of the state suit. An actual controversy as to its contractual duty has arisen between it and the holder of its policy, and hence such a situation exists as is contemplated by the terms of the statute. Moreover, a question of coverage is involved, for the duty to defend and the duty to indemnify are both absolved by criminal conduct on the part of the insured, and this question may not be conclusively decided in the state suit to which the company is not a party, even though it undertakes the defense. See Carpenter v. Edmonson, 5 Cir., 92 F.2d 895. In similar situations it has been held in a number of recent cases that the insurer is entitled to be advised by the court whether or not it is obligated to defend and indemnify the insured against claims upon which suits are threatened or have already been brought. Central Surety & Ins. Corp. v. Caswell, 5 Cir., 91 F.2d 607; Associated Indemnity Corp. v. Manning, 9 Cir., 92 F.2d 168; Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F.2d 166; United States Fidelity & Guaranty Co. v. Pierson, 8 Cir., 97 F.2d 560; Ohio Casualty Ins. Co. v. Plummer, D.C., 13 F.Supp. 169; Western Casualty & Surety Co. v. Odom, D.C., 21 F.Supp. 574; Standard Accident Ins. Co. v. Alexander, Inc., D.C., 23 F.Supp. 807; Maryland Casualty Co. v. Tighe, D.C., 24 F.Supp. 49; American Motorists Ins. Co. v. Busch, D.C., 22 F.Supp. 72; Employers' Liability Assur. Corp. v. C. E. Carnes & Co., D.C., 22 F.Supp. 259; Maryland Casualty Co. v. Hubbard, D.C., 22 F. Supp. 697.

The District Court, therefore, would have been justified in retaining jurisdic-

tion of the instant case in order to determine the question of coverage; but it does not follow that the order of the court appealed from, which overruled the motion for an interlocutory injunction, was incorrect. It is true that injunctions restraining the prosecution of a pending case against an insured have been granted in some instances in connection with suits by an insurer seeking a declaratory judgment of non-coverage, Central Surety & Ins. Corp. v. Caswell, 5 Cir., 91 F.2d 607; Standard Accident Ins. Co. v. Alexander, Inc., D.C., 23 F.Supp. 807; Maryland Casualty Co. v. Tighe, D.C., 24 F.Supp. 49, but in our opinion this course should not be followed in the pending case. We should be guided rather by the principles enunciated in Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A. L.R. 1077, wherein the court considered the Act of Congress, 28 U.S.C.A. § 379, which provides that the writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, in connection with the statute, 28 U.S.C.A. § 377, which authorizes the federal courts to issue all writs necessary for the exercise of their respective jurisdictions. It was held in substance that while a federal court, which has first acquired jurisdiction of the subject matter of a cause, may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect would be to defeat or impair the jurisdiction of the federal court, yet there is no basis for such an injunction where the actions in both cases are in personam and the jurisdiction in one is not affected by the other. In the latter situation, it was said, the rank and authority of both courts are equal and each may proceed without interference from the other.

■■ This decision rules the application for injunction in the pending case. See, also, Pacific Indemnity Co. v. Hite, D.C., 24 F.Supp. 662. The claimant was completely within his rights in instituting his action for damages in the state court, and that court, of course, had complete and independent jurisdiction to entertain the litigation. Even without the prohibition of the federal statute, a federal court possesses no power to interfere with a proceeding in a state tribunal when there is no interference with subject matter in the possession of the federal court and no impairment of its jurisdiction. It may be embarrassing for the insurer here either to defend the action in the state court or to decline to do so, but that is a difficulty inherent in the provisions of its policy which requires it to defend the insured generally, but relieves it of the obligation in the event that the insured has been engaged in the commission of a crime. For like reasons, the fear of the insurer, that it may be estopped from setting up the defense of non-coverage if it defends the suit in the state court, furnishes no reason to restrain the injured party in the exercise of his undoubted right to press the suit against the alleged tort feasor.[1]

Moreover, as we have already shown, the suits respectively pending in the state and federal courts do not cover the same ground. The claimant is not a party to the insurance contract and is not now suing thereon, whereas the insurer bases its suit on the provisions of the policy, confines itself to the question of coverage and does not ask the court to determine the validity of the claim of the administrator of the deceased woman against the physician. Obviously the existence of a controversy between the parties to the insurance policy should not preclude the injured party, a stranger to the contract, from pressing his claim against the insured with all diligence in the state court. Nor will such action on his part interfere with the proceedings in the federal court. In short, each court may proceed with the case before it without reference to the other, except insofar as a prior decision in one tribunal may constitute res adjudicata on one or more questions involved in a subsequent trial in the other.

The order of the District Court overruling the motion for an interlocutory injunction will be affirmed, and the case remanded for further proceedings in accordance with this opinion.

Affirmed and Remanded.

---

[1] It was held in Western Casualty & Surety Co. v. Beverforden, 8 Cir., 93 F. 2d 166, that an insurer is not estopped from denying liability to the injured party on a judgment obtained against the insured by merely defending a suit brought by the injured party, if the insurer gives notice before the trial that because of non-coverage, it will not pay the judgment if recovered. Cf. Aetna Life Ins. Co. v. Maxwell, 4 Cir., 89 F. 2d 988.