**HUNTSMAN, Plaintiff, v. McGOVERN et, Defendants.**

Common Pleas Court, Muskingum County.

No. 36789.  Decided November 23, 1949.

**OPINION**

By CROSSLAND, J.

Pursuant to the terms and conditions of a restraining order heretofore granted herein hearing was had, evidence introduced, and the cause submitted to the court, after argument and citation of authorities, as upon the merits, and the court makes its determination herein accordingly.

Certain facts are unquestioned. There is a subsisting contract between the Zanesville plant of The Line Material Company and local union 767 comprising its eligible electrical employees, to which both United Electrical Radio and Machine Workers of America, hereinafter referred to as U. E., and International Union of Electrical, Radio and Machine Workers —C. I. O., hereinafter referred to as I. U. E., claim or may claim property. Said contract does not expire before June 30, 1950, and may continue thereafter. It is the only collective bargaining vehicle of said employees presently or immediately available to them in their dealings and relationship with said company and it is conceded on both sides that said employees are entitled to its effective, effectual and continued operation in their behalf, regardless of their divided interest, activity and allegiance otherwise. Title to physical property and other assets of local 767 is in controversy, including dues check-off provided for under said contract, and said local union is impeded and frustrated in its physical operation as well as in its representative capacity. There is no apparent prospect of any unified integration of said employees, determinable by them, short of an election and decision pursuant to the provisions of the Labor Management Relations Act of 1947, which is not an immediate prospect. Meantime, the cleavage dividing groups of employees threatens to deepen and widen, thereby accentuating an acute difficulty which already confronts and confounds effective labor management relationship within said plant. While this court is asked to enjoin acts of groups or individuals, it cannot and does not ignore the over-all interest, concern and welfare of the entire number of affected employees, whose basic interest, concern and welfare is the primary and fundamental responsibility of a court of equity after its powers have once been invoked by a dissident member.

"As a rule an application for an injunction is addressed to the sound discretion of the court, its allowance being a matter of grace rather than of strict right, and determined by the nature of the case, the peculiar facts presented therein, the law governing the same, and by considerations of public policy and convenience." **21 O. Jur., 1006, Sec. 17.**

In considering what this court may do to protect and conserve the interest of said employees pending an election and determination by the National Labor Relations Board,

the court considers that the situation with which it is called upon to deal in this case is not unlike that which normally exists under said Labor Management Relations Act and that, accordingly, the provisions of that Act apply analogously to the consideration which should be given by this court in the instant case.

Section 141 of said Act, in part, provides:

"It is the purpose and policy of this Act, in order to promote the full flow of commerce—**to protect the rights of individual employees** in their relations with labor organizations whose activities affect commerce—and to protect the rights of the public in connection with labor disputes affecting commerce."

Section 157 provides that:

"Employees shall have the right to self-organization, **to bargain collectively through representatives of their own choosing,** and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection—."

The court considers, as it considers to be the import of said Act, that the employees directly affected, in whose behalf a bargaining agreement is made, are the persons primarily concerned, and that their concern is therefore the primary consideration of this court in any matter relating to them affecting their labor representation.

To put the matter another way, this court considers and determines that the labor representation question posed in this case is one which has its proper inception and answer in the plant employees of the local union and that their interest and desire and not the interest and desire either of U. E. or of I. U. E., should and shall govern. The affiliation, if any and whatever, of the local union, should be determined in accordance with the wish and expression of local union members and thereby proceed from below up into any higher level or levels of association or affiliation, rather than as a binding and irrevocable harnessing of absolute control and direction from the top down. That is what this court understands to be the intention and meaning of the provisions of the Labor Management Relations Act of 1947 and that is

the spirit and purpose which this court intends to effectuate in this case. Such a view is not without legal precedent.

Williston on Contracts, Revised Edition, Vol. Two, page 1100, section 379 A, states:

"A number of courts—have adopted the theory that the employee is the beneficiary of a valid contract between the union and the employer.—"

and again on page 1101, the author says:

"The fact that there is no adequate remedy for the enforcement of such an agreement between a union and an employer against one another affords no reason in such a case why the beneficiary of such an agreement should not enforce it."

"Third party for whose benefit contract is made may enforce it, notwithstanding he is not named therein nor in privity to consideration." McCoy v. St. Joseph Belt Ry. Co., 77 S. W. (2nd) 175, 2nd syllabus.

"A contract between railroad company and trainmen's union. as to pay, seniority, and discharge of trainmen employed by company was valid, so as to authorize action by union member against company for alleged breach of contract by arbitrarily discharging plaintiff without just cause, though he was not direct party to contract, except **as made so thereby for his benefit**." Moore v. Illinois Central R. Co., 24 Fed. Supp., 731 (1st syllabus)

This court approves, adopts and follows the reasoning and conclusions of the Court of Chancery of New Jersey in the case of Internationl Union, etc. v. Becherer, 61 Atlantic 16, decided August 31, 1948, affirmed by Superior Court, Appellate Division, July 12, 1949, the 3rd, 4th and 5th syllabi of which read as follows:

"3. A local union affiliating itself with a national or international organization composed of local unions does not by such affiliation lose its character as a separate and distinct voluntary association; and by such affiliation a local does not become an indivisible and inseparable part of the larger organization, but **owes its creation and continued existence to its own members who may withdraw at will.**

4. Property accumulated by a local labor union from contributions made by individual members is a trust fund for

benefit of those members and though legal title to such property may be vested in officers, **such ownership is of a trust character for use of individual members.**

5. Affiliation of a local union with an international union creates liability resting on local union, while affiliation endures, to pay dues or per capita tax called for in international charter, but gives the international union nothing more than a claim or an account receivable, and **no direct property right in the local union's assets arises in favor of the international.**"

On page 20, 2nd column, the court says:

"The existence of the Local Union, its revenue and functions, are not derived from or dependent upon the International. These individual unions could well continue their existence and their functions without any relationship with any national or international labor organization. Such relationship may have its decided advantage, but it is not a sina qua non. —**Each local union is a separate and distinct voluntary association which owes its creation and continued existence to the will of its own members.** The property accumulated by the local union from contributions made by the individual members is a trust fund for the benefit of those members, and though the legal title to such property may be vested in the officers of the local, such membership is of a trust character for the use of individual members."

It is, therefore, ordered, adjudged and decreed:

1. That Local Union 767, as constituted immediately prior to November 6, 1949, without outside affiliation, continue as the representative for all purposes of collective bargaining in all respects with The Line Material Company.

2. That an election of all members of said Local, as of November 5, 1949, be had and held at the earliest practicable date, for the election of pro tem officers to serve in behalf of said membership and to administer the affairs of said Union both in its operation and in relation to said Company, as trustees of this court, until the further order of this court, and to act as such in all proper and essential respects pending action and determination by The National Labor Relations Board.

3. That all books, records, accounts, property, funds, premises and other assets of said Local be delivered into the possession of said trustees for their proper and appropriate use and safe-

keeping, and who shall also receive and disburse for recognized proper and necessary local purposes only all dues check-off from said Company, retaining all such receipts thereover, out of which latter there later may be forwarded such national or international or other organizational dues, if any, as may be consistent and in accordance with eventual affiliation resulting subsequent to National Labor Relations Board intervention, action, decision and determination and when the jurisdiction and order of this court shall have terminated.

4. Until election as above provided all property and dues check-off shall remain and become impounded as heretofore provided in the former order of the court.

5. For the purpose of arranging for and holding said election and in charge thereof, as well as approving before disbursements all future funds and income received and acting for the court in all other respects pertaining to the effective and efficient fair and impartial use and operation of said Local Union 767 in behalf of all said employees, while in the hands of said trustees, the court hereby appoints as its direct representative for all such purposes, under whose direct authority and control said Local Union Trustees shall act, John C. Ringhisen and Joseph J. Pfeifer, attorneys of this bar, whose compensation for their services and expenses herein shall be determined by the court and ordered paid out of the funds of said Local at the completion of their service and before final determination of this cause.

6. Until such time as this court fully relinquishes jurisdiction in and of this cause, all parties hereto, their servants and employees and all persons acting in concert or in conformity with them or any of them are hereby enjoined from acting or presuming or purporting to act in any way that in any respect will or may prejudice or otherwise adversely affect any right, title or interest in Local Union 767, unaffiliated.

It is further ordered that the costs of this action, of which the aforesaid compensation and expense shall be part, be paid from the funds of said Local, unless otherwise provided by the parties, and exceptions to the within findings, determinations and orders are granted to plaintiff and defendants.

## ORDER CONFIRMING ELECTION AND JOURNAL ENTRY

No. 36789.   Decided December 5, 1949.

**176**

By CROSSLAND, J.

This day the report of John C. Ringhisen and Joseph J. Pfeifer, attorneys at law, of the election of employees of The Line Material Company who were members of Local Union 767, as of November 5, 1949, of officers pro tem, pursuant to the former order of the court, and, the court considering and finding that said election proceedings were fairly, fully and impartially conducted in all respects of notice, knowledge, meeting place and time and nominations and elections thereat, and in all other respects, and that the following named persons were duly elected as such officers pro tem to administer the affairs and business of said Local Union 767 in its internal operation as well as in its labor management relationship with said Company, in all proper and essential respects, pending action and determination by The National Labor Relations Board relative to subsequent affiliation, if any, to-wit:

William T. McGovern, president;
Wayne Dozer, vice president;
T. M. Forsythe, financial secretary;
T. J. Withers, recording secretary;
E. A. Luster, chief steward;
Russell Pollock, )
Paul O'Hara, ( executive board members;
Clara Wollard, )

Paul O'Hara, )
 negotiating committee members;
Clara Wollard, )

Robert Carpenter,)
William Street, ( trustees;
James Ritterbeck,)

William Wilburn, sergeant-at-arms.

It is therefore ordered, adjudged and decreed:
(1) That said persons serve as such officers to the time of such certification and election and qualification thereunder, or until the further order of the court between this and such time, as trustees of this court;
(2) That said officers pro tem, as trustees of the court, in behalf of said Local Union 767, unaffiliated, and its membership as of November 5, 1949, receive and possess all books,

records, accounts, property, funds, premises and all other assets of said Local Union 767, for the proper and appropriate use and safekeeping of said Local Union 767 and its said membership, for whose use and benefit said officers, as such trustees, are also entitled to and shall receive from said Company into said Local Union Treasury all dues check-offs accruing under the existing Union-Company contract in the Zanesville plant and all other local union income, if any, due or to become due from any other source, expending and disbursing therefrom by bank check for recognized proper and necessary local purposes only, and then only upon approval of said attorneys, at least one of whom shall be required to countersign any and all checks of said Union before issuance thereof by the disbursing Union officer, with appropriate arrangement therefor at the offices of the Local Union 767 bank depository.

(3) That, reiterating the language of Clause 6 in the court's order of November 23, 1949, until such time as this court fully relinquishes jurisdiction in and of this cause, all parties hereto, their servants and employees and all persons acting in concert or in conformity with them or any of them, are hereby enjoined from acting or undertaking, presuming or purporting to act in any way that in any respect will or may prejudice or otherwise adversely affect any right, title or interest in Local Union 767, unaffiliated; which concerns and pertains to any and all matters, property and interests of said Local Union 767, including the preservation of its unimpaired existence and integrity as a local union with all its property, income and assets, including said Union-Company contract and the benefits and perquisites thereof divorced from U. E. or other affiliation, which said Local Union 767 is and shall remain intact and inviolate as a single entity, without assertions or acts in conflict, denial or derogation thereof, in any manner or respect, direct or indirect, said Local Union 767, as herein constituted, being the sole union authority engaged in any of the matters, proceedings and transactions herein involving any and all of the parties hereto, their servants, employees and associates; and all said parties, servants, employees and associates are hereby enjoined from any and all efforts, acts, deeds and assertions contrary or contradictory thereto.