Asociación Insular de Guardianes de Puerto Rico et al.,
Plaintiffs and Appellees, v. Bull Insular Line, Inc.,
et al., Defendants and Appellants.

No. 10876.   Argued June 3, 1954.—Decided September 30, 1955.

*Charles R. Hartzell, Rafael O. Fernández, José L. Novas* and
*Vicente M. Ydrach* for appellants.   *Víctor M. Bosch* for ap-
pellees.   *José Trías Monge, Attorney General, Aurelio To-
rres Braschi, Assistant Attorney General, Ramón Acevedo
Oliveras* and *Eduardo Álvarez de la Vega* for Labor Relations
Board, as *amicus curiae.*

Per Curiam.

Clause XIII of the Collective Bargaining Agreement made
on October 25, 1950, by the Asociación Insular de Guardia-
nes de Puerto Rico and the Puerto Rico Steamship As-

sociation, in representation of the Bull Insular Line, Inc. and other shipping companies, reads verbatim as follows:

"CLAUSE XIII—GRIEVANCES AND COMPLAINTS

"A.—The Association agrees not to suspend work as a result of any incident, dispute, controversy, or claim during the life of this agreement.

"B.—In the event of any incident, dispute, controversy, or claim, or any controversy on the interpretation of this agreement, the Association, through its President or Secretary-Treasurer, or any official or officials duly authorized by the first two, shall forthwith submit the questions in dispute to an authorized representative of the Company. In the event the question is not satisfactorily settled within 24 hours after it has been submitted by the Association to the Company, the same shall be submitted within the following 24 hours by any of the parties to the Arbitration Committee hereby created, which shall be composed of five (5) members, two in representation of the Union and two in representation of the Company, who shall not be lawyers. The fifth member shall be appointed by mutual consent by the representatives of the Association and the Company. In the event the parties fail to reach an agreement, the fifth member shall be one of the official arbitrators of the Insular Labor Department or the person appointed by the Insular Commissioner of Labor of Puerto Rico.

"C.—The said Arbitration Committee shall give the Association and the Company an opportunity to express their respective points of view, and the decision of that Committee shall be final and binding on both parties. The Committee shall meet and enter a decision in writing within a period of ten (10) days, counted from the date of submission for its decision of the incident, dispute, controversy, or claim, unless the parties decide to extend this period."

The Company discharged two of its watchmen and the question of the discharge was submitted to an Arbitration Committee. On July 12, 1952, the two representatives of the Association in the Committee and those of the Company, together with the fifth member designated by the Commissioner of Labor, met to consider and decide whether or not the discharge of the laborers was justified. At that meeting the Company's representatives and the fifth member invited

the representatives of the Association to sign with them a "submission agreement" as a prerequisite to enable the Committee to arbitrate the complaints presented by the laborers. The members of the Committee who represented the Association refused to comply with such requirement, wherefore the Committee in full refused to arbitrate, declaring that "there is no arbitration case simply because we have been unable to implement it" through the signature of both parties to a "submission agreement", and "because the parties did not reach an agreement regarding the jurisdiction to be vested in the Arbitration Committee with its fifth member." In view of this, and relying upon the provisions of the Uniform Declaratory Judgments Act (Act No. 47 of April 25, 1931, Sess. Laws, p. 378), the Association and the two discharged laborers filed a complaint against the Bull Insular Line, against the two representatives of the latter, and against the fifth member of the Committee.

The Company and its two representatives filed a motion to dismiss the complaint for lack of jurisdiction and of facts sufficient to constitute a cause of action. At a pretrial conference the parties stipulated that the fifth member should be eliminated as a party defendant, and also that:

"(1) The plaintiffs maintain that there is no need for a submission agreement because the manner in which the Arbitration Committee is defined and constituted in the Collective Bargaining Agreement vests the Committee with jurisdiction over all complaints or controversies which may arise between the Company and the plaintiffs; and

"(2) . . . That defendants' contention is that the court lacks jurisdiction, and even in the event that the court had jurisdiction to decide, their position is different, namely, that the defendant Company's contention is that the Arbitration Committee mentioned in Clause XIII of the Collective Bargaining Agreement refers only to complaints and grievances which may be submitted to it by a submission agreement of the parties."

They also presented by stipulation the Collective Bargaining Agreement above referred to. The court rendered

judgment declaring that it had jurisdiction to take cognizance of the case under its consideration, and concluding definitively that "pursuant to Clause XIII of the Collective Bargaining Agreement, *supra*, and by reason of the wording of that clause and the manner in which the Arbitration Committee thereby created is defined and constituted, the parties are under no obligation to sign individually a submission agreement as a means of settling the controversy and conferring jurisdiction on the arbitrators, wherefore the petition is hereby granted."

██ The only error assigned by the defendants on appeal is that "the lower court erred in declaring that it had jurisdiction of the petition for declaratory judgment filed by plaintiffs, since the facts alleged are indicative of unfair labor practices, the investigation and award of which are within the exclusive jurisdiction of the Insular Labor Relations Board."

In ruling that it was competent to take cognizance of the case under its consideration, the trial court, in a lengthy and reasoned "Declaratory Judgment," states as follows:

"The defendants' contention that this Court lacks jurisdiction to take cognizance of this petition on the ground that the facts alleged by the Asociación de Guardianes constitute at the most unfair labor practices, the investigation and award of which are within the exclusive jurisdiction of the National Labor Relations Board or of the Insular Labor Relations Board, is without merit and should be rejected by the court.

"             .     .     .     .     .     .     .     .

"Section 10 (*a*) of the Taft-Hartley Act, to which the Bull Insular Line is subject, gives the National Labor Relations Board exclusive jurisdiction if the company commits any of the unfair labor practices listed in § 8. But the enumeration by the Wagner Act and the Taft-Hartley Act of the unfair labor practices over which the National Labor Relations Board has exclusive jurisdiction does not prevent the states from enforcing their own policies in matters not governed by the federal law . . . *Labor Relations Board* v. *N. Y. & P. R. S. S. Co., supra.* [69 P.R.R. 730.]

"The instant case is a proceeding involving the interpretation of the arbitration clause of a collective bargaining agreement, for the purposes of its enforcement. The violation of a collective bargaining agreement is an unfair labor practice under § 8(1) (f) of the Insular Act. But that is not true under the Federal Act. Neither the National Labor Relations Act, familiarly known as the Wagner Act, nor the Taft-Hartley Act, provides that a controversy in the application of a collective bargaining agreement which may lead to a judicial interpretation for enforcement thereof, is an unfair labor practice. Those Acts are concerned principally with creating conditions which will enable the parties to reach an agreement. They do not deal with the enforcement of agreements as such. Since the Taft-Hartley Act does not provide that a controversy in the application of a collective bargaining agreement which may lead to a judicial interpretation for enforcement thereof shall be an unfair labor practice, there is no conflict between it and § 8(1) (f) of the Insular Act, and, consequently, that section may be enforced even against an employer subject to the Taft-Hartley Act despite the provisions of § 10(a) of the latter Act. *Labor Relations Board* v. *N. Y. & P. R. S. S. Co., supra.*

"There is a second ground for rejecting the contention that we lack jurisdiction in this case. Even if Congress had barred state boards from correcting unfair labor practices which are not included in the Federal Act, we would still have jurisdiction in this particular case. That is because, contrary to the assumption we made *arguendo* in discussing the first ground, this is not a proceeding under the Insular Act to correct an unfair labor practice. Rather, it is simply a private suit in a local court to obtain the interpretation of a contract for the purposes of its enforcement. And Congress did not intend to oust the local courts of jurisdiction in such cases. *Labor Relations Board* v. *N. Y. & P. R. S. S. Co., supra.*

"Our Act and the nature of this case make it clear that this is a suit to enforce private rights and not a proceeding to correct an unfair labor practice. Section 8(1) of our Act enumerates the unfair labor practices an employer may not commit and there is nothing in it to bar this action as a private suit. An employee or a union in his behalf may sue an employer in the courts for enforcement of the provisions of a collective bargaining agreement. *Labor Relations Board* v. *N. Y. & P. R.*

*S. S. Co., supra.* This case comes within that doctrine as it is a suit by a union, in its own right and on behalf of two of its members, seeking the interpretation of a provision of a collective bargaining agreement for the purposes of its enforcement by the contracting parties.

"There is likewise nothing in the Federal Act which prohibits this private suit. Even if, contrary to the present case, the facts showed an unfair labor practice under the Federal Act, the exclusive jurisdiction .of the Board to protect the public right in such a case does not necessarily bar a suit in the local courts by an employee to protect his private rights. This rule applies with even more force where the plaintiff, as here, files a suit of the nature of the present case seeking the interpretation of a collective bargaining agreement which makes compulsory arbitration the final step in settling grievances and disputes under the agreement.

"In view of the foregoing, defendants' contention that we have no jurisdiction in this case is overruled. . . ."

As stated in the citation of the *N. Y. & P. R. Steamship* case, *supra,* this is not a proceeding in which the gist of the question is whether or not the employer committed an unfair labor practice. In the latter case, the only question involved would be a public right and our Labor Relations Board would have exclusive jurisdiction. *Quiñones* v. *Labor Relations Board,* 69 P.R.R. 551, and cases therein cited. The only question involved here is the private rights of the employees under the collective bargaining agreement. And, as stated in the *N. Y. & P. R. S. S. Co.* case, at pp. 791–96, particularly in footnote 4, the exclusive jurisdiction of the Board to protect the *public* right does not necessarily bar a suit in the local courts by employees to protect their *private* rights where, as here, they maintain that they were discharged without any justification. If the Board had acted in the instant case to enforce the public right, the question would be different as to whether or not this litigation was improper because it interfered with the proceeding before the Board. However, in the absence of a proceeding pending before the Board, this private suit to enforce a private right against

an alleged unjustified discharge is not different from a private suit claiming wages under a collective bargaining agreement.   We do not believe it was the legislative intent to bar such private suits where, as here, the Board has taken no action in connection with the public right involved.   *Cf. Labor Relations Board* v. *I.L.A.*, 73 P.R.R. 568; *Asoc. Empl. Bayamón Transit* v. *Labor Relations Board*, 70 P.R.R. 273.

Cases such as *California Ass'n* v. *Building and Constr. Tr. Council*, 178 F. 2d 175 (9th Cir. 1949), and *Jacobs* v. *Clearing Machine Corp.*, 108 N. E. 2d 284, do not apply, since they involve efforts to obtain from the courts declaratory judgments on the power of the Labor Relations Board to enforce public rights.   We agree that under those circumstances the exclusive remedy under § 7(a) of our Act would lie with the Board.   *Myers* v. *Bethlehem Corp.*, 303 U. S. 41;   Davis, *Administrative Law*, pp. 664 *et seq.*   However, for the reasons already stated, this case is distinguishable.

██ Actually, the only question involved in the instant case is whether, in view of the fact that the Association and the Company had designated their representatives on the Arbitration Committee as well as the fifth member, and the fact that the opinions among the Committee members were conflicting as to whether or not a "submission agreement" was necessary, such conflict could be taken, under Act of 1931, *supra*, to the former District Court of Puerto Rico, and if it could be so taken, whether that court had authority to take cognizance of the proceeding.

According to § 2 of Act No. 47 of 1931, *supra:*

"Every person interested in a deed, will, written contract or other document constituting a contract, or whose rights, status or other judicial relations are affected by any statute, municipal ordinance, contract or franchise, may obtain a determination of any difference in regard to the construction or validity of said statutes, ordinances, contract or franchise, and also a declaration of the rights, status or other judicial relations derived therefrom."

By express provision of that Act, the former district courts were vested with authority to take cognizance of complaints brought under that Act.[1] Section 1 of Act No. 47 of 1931, supra. The collective bargaining agreement made by plaintiff Association and the defendant Company was a contract. 21 Labor Cases (1952), § 66,859; Updegraff and McCoy, *Arbitration of Labor Disputes*, p. 43; 64 Harv. L. Rev. 1338, 1339. It was on the authority of one of the clauses of that contract that they submitted to an Arbitration Committee the question of discharge of the two employees. There being a difference of views among the Committee members regarding the juridical relations derived from one of the clauses of the agreement, they had the right to resort to a competent court to settle the conflict. That court was none other than the former District Court. Consequently, the trial court acted according to law in entertaining the proceeding.

The judgment appealed from will be affirmed.

---

[1] The authority is at present vested in the Superior Court. See § 13 of Act No. 11 of July 24, 1952 (Spec. Sess. Laws, p. 30).